**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MIZANOOR RAHAMAN,

               Plaintiff,

   v.                                 9:23-cv-00835 (AMN/DJS)

SGT. RICHARD REYNOLDS, *individually and in his official capacity*; SGT. WILLIAM TOLMAN, *individually and in his official capacity*; C.O. ANDY FLEMING, *individually and in his official capacity*; C.O. MICHAEL ROGERS, *individually and in his official capacity*; C.O. SCOTT GARDNER, *individually and in his official capacity*; C.O. JOHN DOES #1-10, *individually and in their official capacities*,

               Defendants.

---

**APPEARANCES:**

**JON L. NORINSBERG, ESQ., PLLC**
825 Third Avenue – Suite 2100
New York, New York 10022
*Attorneys for Plaintiff*

**PREMO LAW FIRM**
20 Corporate Woods Boulevard
Albany, New York 12211
*Attorneys for Plaintiff*

**HON. LETITIA JAMES**
New York State Attorney General
The Capitol
Albany, New York 12224
*Attorneys for Defendants Reynolds, Tolman, Fleming, Rogers, and Gardner*

**NO APPEARANCES:**

**C.O. JOHN DOES #1-10**
*Defendants*

**OF COUNSEL:**

**JON L. NORINSBERG, ESQ.**
**CHRISTINA CTORIDES, ESQ.**

**BRIAN D. PREMO, ESQ.**

**ERIN P. MEAD, ESQ.**
**JORGE A. RODRIGUEZ, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On July 12, 2023, plaintiff Mizanoor Rahaman ("Plaintiff") commenced this action pursuant to 42 U.S.C. 1983 ("Section 1983") against Sergeant Richard Reynolds ("Sergeant Reynolds"), Sergeant William Tolman ("Sergeant Tolman"), Correction Officer Andy Fleming ("Officer Fleming"), Correction Officer Michael Rogers ("Officer Rogers"), Correction Officer Scott Gardner ("Officer Gardner") (collectively, "Defendants"); and ten Correction Officer John Does (the "Doe Defendants") in connection with alleged events during Plaintiff's incarceration at Ogdensburg Correctional Facility ("Ogdensburg"). Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' partial motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 53 ("Motion"); *see also* Dkt. Nos. 63, 66.[1] For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND[2]

### A.  The Parties

Plaintiff is a New York resident and approximately thirty-six years old. Dkt. No. 1 at ¶¶ 6, 26. He was in the care and custody of the New York State Department of Corrections and

---

[1] Defendants have moved to seal a limited number of documents that contain sensitive medical information. *See* Dkt. No. 54. The Court finds that Defendants' unopposed proposal is narrowly tailored and that the relevant factors weigh in favor of sealing the relevant documents and thus grants this motion. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006); *see also AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-cv-00598, 2021 WL 776701, at *4 (N.D.N.Y. Mar. 1, 2021).

[2] Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response. *See* N.D.N.Y. L.R. 56.1. The Court has also considered the parties' other submissions. *See generally* Dkt. Nos. 53, 63, 66.

Community Supervision ("DOCCS") from July 29, 2019 until May 25, 2021, when he was released. Dkt. No. 63-28 at ¶¶ 1, 44. Plaintiff was incarcerated at Ogdensburg until March 5, 2021, when he was transferred to Edgecombe Correctional Facility ("Edgecombe"). Dkt. No. 66-5 at ¶ 81.

At all relevant times while Plaintiff was at Ogdensburg, DOCCS employed Defendants Fleming, Gardner, and Rogers as correction officers and Defendants Reynolds and Tolman as correction sergeants. Dkt. No. 63-28 at ¶¶ 58, 84, 105, 117, 143.

## B. Relevant Events

In September 2020, Plaintiff lived in dormitory D-2 and was assigned to work in Ogdensburg's laundry shop. Dkt. No. 66-5 at ¶¶ 1-2. In order to reach the laundry shop, Plaintiff needed to leave D-2, walk outside, walk through or around a separate structure called the "shack house," which housed a metal detector, and then enter another building (approximately fifty feet away) where the laundry shop was located. *Id.* at ¶¶ 7-9, 11.

According to Plaintiff, as he was heading to the laundry shop on September 2, 2020, Sergeant Reynolds and Officer Fleming used excessive force against him outside the shack house at 12:15 p.m. Dkt. No. 63-28 at ¶ 2. Officer Rogers was present, but failed to intervene.[3] *Id.* at ¶ 7. More specifically, Plaintiff contends that after he walked through the metal detector in the shack house and began to step outside, Officer Fleming grabbed his wrist and Sergeant Reynolds then instructed Officer Fleming to hit Plaintiff. Dkt. No. 66-5 at ¶¶ 26-27, 30. Sergeant Reynolds and Officer Fleming proceeded to assault Plaintiff for approximately seven to ten minutes. *Id.* at ¶¶ 34, 37-41.

---

[3] Plaintiff does not contend that Sergeant Tolman and Officer Gardner were present during the alleged assault, nor that they failed to intervene. *Id.* at ¶ 54.

According to Defendants, these events never occurred.  Officers Fleming and Rogers were assigned to work in different areas of the facility (the weight room and garden area, respectively).  Dkt. No. 63-28 at ¶¶ 59-60, 85.  Officer Rogers contends he was not near the shack house on September 2, 2020, *id.* at ¶ 99, while Officer Fleming "would have no reason to be" at the shack house and, instead, "would have been in the weightroom[,]" *id.* at ¶¶ 75-76; Dkt. No. 66-5 at ¶ 45.  Defendants also contend that the shack house was not usually open during the day.  Dkt. No. 66-5 at ¶ 13.  For his part, Sergeant Reynolds was assigned to oversee all the facility's programs and denies assaulting Plaintiff in any way.  Dkt. No. 63-28 at ¶¶ 145, 148.

Following the alleged assault, Plaintiff contends that he walked to the laundry shop, reported what had happened to his supervisor, and asked to speak with Sergeant Reynolds.  Dkt. No. 66-5 at ¶ 42.  Plaintiff further contends that once Sergeant Reynolds arrived, Sergeant Reynolds directed Officer Rogers to escort Plaintiff to the infirmary.  *Id.* at ¶¶ 43-44.  Plaintiff alleges that he told a non-party nurse there that he had been assaulted, and that Sergeant Tolman came to the infirmary to take photographs of Plaintiff's injuries.  Dkt. No. 63-28 at ¶¶ 9-10.  According to Defendants, the only portion of these events that occurred is that Sergeant Reynolds was contacted so that Plaintiff could go to the infirmary for scratches on his right hand and wrist that Plaintiff had sustained in his dormitory.  *Id.* at ¶¶ 120-21; Dkt. No. 66-5 at ¶¶ 42-44, 57-59.

The parties do agree that Plaintiff was seen by a non-party nurse in the infirmary at approximately 12:40 p.m. on September 2, 2020.  Dkt. No. 63-28 at ¶ 8.  The injury report prepared by this nurse states that Plaintiff's injury occurred at 12:25 p.m. in a dormitory, consisted of a "scratch to back of right hand + wrist.  Less than ½" in size" and was treated with "Ice pack – 2

tylenol tabs." Dkt. No. 53-5 at 5.[4]  The report lists Plaintiff's statement regarding the injury as "scratch (R) hand" and includes Plaintiff's signature. *Id.*

After being seen in the infirmary, Plaintiff returned to his dormitory. Dkt. No. 63-28 at ¶ 11. Plaintiff alleges that later on September 2, 2020, the non-party nurse called his dormitory and spoke with Officer Gardner. *Id.* at ¶ 12. Officer Gardner subsequently asked Plaintiff if he was okay, and Plaintiff responded that he was. *Id.* at ¶ 13.

Plaintiff was next seen in the infirmary on January 4, 2021. *Id.* at ¶ 15. At that time, he was seen by a different non-party nurse for a headache that had resolved and did not report any other issues. *Id.* at ¶¶ 15-16. Plaintiff claims that he submitted hundreds of sick call requests between September 2, 2020 and March 5, 2021 in connection with the alleged assault, but did not receive medical treatment. *Id.* at ¶ 34.

Plaintiff never filed a grievance in connection with the alleged assault on September 2, 2020. *Id.* at ¶ 17. Plaintiff contends that he did not do so because (i) Officer Gardner did not provide him with the necessary form; and (ii) because Plaintiff feared retaliation. *Id.* at ¶¶ 17-18. Officer Gardner was out on medical leave for a work-related injury beginning on October 4, 2020, and did not return to Ogdensburg until after Plaintiff was transferred to Edgecombe on March 5, 2021. *Id.* at ¶ 24. On the day Plaintiff was transferred to Edgecombe, Plaintiff reported to medical staff that he had been assaulted at Ogdensburg. *Id.* at ¶ 36. Plaintiff was subsequently seen a number of times in Edgecombe's infirmary, and once at a local hospital, for complaints of left wrist and lower back pain. *Id.* at ¶¶ 37-39. While at Edgecombe in March 2021, Plaintiff also complained that the September 2, 2020 injury report prepared at Ogdensburg was incorrect and

---

[4] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

requested that it be revised.  *Id.* at ¶¶ 42-43.

The parties agree that while at Ogdensburg, Plaintiff was never subject to disciplinary action[5] or placed in punitive segregation, nor were any reports of misconduct submitted against Plaintiff.  *Id.* at ¶¶ 55, 57.

### C. Plaintiff's Claims

Plaintiff's remaining claims under Section 1983,[6] against all Defendants, are as follows: (i) excessive force, Dkt. No. 1 at ¶¶ 28-30; (ii) failure to intervene, *id.* at ¶¶ 47-50; (iii) false arrest, *id.* at ¶¶ 31-34; and (iv) deliberate indifference to medical needs, *id.* at ¶¶ 35-40.  Plaintiff seeks, *inter alia*, $10 million in damages.  *Id.* at 8.

### III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be

---

[5] Plaintiff was subject to disciplinary action at another facility back in 2019.  *Id.* at ¶ 56.

[6] The parties previously stipulated to the discontinuance, with prejudice, of all claims against Defendants in their official capacities, as well as Plaintiff's fourth claim under Section 1983 for, *inter alia*, violation of Plaintiff's First and Fourteenth Amendment rights.  *Compare* Dkt. No. 20, *with* Dkt. No. 1 at ¶¶ 41-46; *see also Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025) ("[A] Section 1983 claim for damages against a state official can only be asserted against that official in his or her *individual* capacity.") (alteration in original) (citation omitted).

tried.'" *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

A defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

### A.  Claims against Sergeant Tolman and Officer Gardner

Defendants first argue that all claims against Sergeant Tolman and Officer Gardner should be dismissed because neither was involved in any constitutional violation against Plaintiff. Dkt. No. 53-39 at 11-12.

Under Section 1983, "'[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

7

Constitution and laws' is 'liable to the party injured.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (alterations in original) (quoting 42 U.S.C. § 1983).

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013)). A plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Keyes v. Venettozzi*, No. 18-cv-0372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (citation and quotation marks omitted). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

Plaintiff "does not oppose" the dismissal of all claims against Officer Gardner. Dkt. No. 63 at 31 n.1. Based on the parties' agreement, the Court grants this portion of the Motion and dismisses all claims against Officer Gardner. *See also Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.").

There is also no genuine dispute of material fact regarding the personal involvement of Sergeant Tolman in any of the constitutional violations that Plaintiff has alleged. As detailed above, Plaintiff contends that only Sergeant Reynolds and Officers Fleming and Rogers were present for the alleged assault at the shack house; Sergeant Tolman is not alleged to have been

present or involved. *See supra* Section II.B & n.3. As for Plaintiff's medical care, Sergeant

Tolman's only alleged involvement is arriving at the infirmary, after Plaintiff was already there,

in order to take photographs. Dkt. No. 66-4 at 4. Because the undisputed record establishes that

Sergeant Tolman was not personally involved in any of the four remaining constitutional violations

alleged by Plaintiff,[7] the Court grants this portion of the Motion and dismisses all claims against

Sergeant Tolman. *Tangreti*, 983 F.3d at 618.

## B. Excessive Force and Failure to Intervene Claims

"The Eighth Amendment prohibits the infliction of '[c]ruel and unusual punishments' on

those convicted of crimes, which includes punishments that 'involve the unnecessary and wanton

infliction of pain.'" *Morgan v. Dzurenda*, 956 F.3d 84, 88 (2d Cir. 2020) (alteration in original)

(quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 178 (1976)). "To establish an Eighth Amendment

claim for excessive force, an incarcerated individual must prove '(1) subjectively, that the

defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated

'contemporary standards of decency.'"" *Josey v. Ramos*, No. 21-cv-00637, 2025 WL 2880706, at

*3 (N.D.N.Y. Oct. 9, 2025) (quoting *Clark v. Gardner*, 256 F. Supp. 3d 154, 166 (N.D.N.Y.

---

[7] Plaintiff's separate contention, regarding Sergeant Tolman's purported spoliation of photographic evidence, also fails. Dkt. No. 63 at 24-27. As an initial matter, it appears that Plaintiff did not raise this issue during fact discovery, which closed last year. *See generally* Docket Sheet. In any event, the Court agrees with Defendants that Plaintiff has failed to carry his burden on this issue. Dkt. No. 66-4 at 14-15; *see, e.g., ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 374 (2d Cir. 2024) ("A party seeking sanctions based on spoliation must establish by a preponderance of evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'") (quoting *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018)). For example, Plaintiff has not established that photographs of his injuries ever existed, that such photographs were in the control of any Defendant at the time of their alleged destruction, or that any Defendant was obligated to preserve the photographs at the time of their alleged destruction.

2017)). Further, "[p]rison officials can be held liable under 42 U.S.C. § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)).

With respect to the three remaining Defendants, the Motion argues that (i) Plaintiff's excessive force and failure to intervene claims against Officers Fleming and Rogers should be dismissed, because both officers were assigned to work elsewhere in the facility at the time in question; (ii) Plaintiff's excessive force claim against Officer Rogers should also be dismissed because he is not alleged to have assaulted Plaintiff; and (iii) Plaintiff's failure to intervene claim against Sergeant Reynolds and Officer Fleming should be dismissed, because each of them are alleged to have directly participated in the assault. Dkt. No. 53-39 at 13-16.

The current record does not support granting Defendants' summary judgment based on their first argument. Whether or not Officers Fleming and Rogers were present at the shack house during Plaintiff's alleged assault at 12:15 p.m. on September 2, 2020 remains a disputed factual issue. Plaintiff has testified that, at this time, Officer Fleming assaulted him and Officer Rogers failed to intervene. Dkt. No. 63-28 at ¶¶ 48-49; *see also Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("[A] § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.") (citation omitted). Defendants assert that, at 12:00 p.m., Officer Rogers was inside another building approximately eighty yards away from the shack house. Dkt. No. 66-4 at 9-10. Defendants ask the Court to draw a number of logical inferences to conclude that Officer Rogers was not present at the shack house approximately fifteen minutes later. *See, e.g.,* Dkt. No. 53-38 at ¶¶ 93-96 ("If C.O. Rogers is not at the horticulture building at 12 pm for the I/Is [incarcerated individuals'] arrival, such would be reported as the I/Is would be

10

unsupervised.  [ ] C.O. Rogers cannot leave his bid during programs.  [ ] If C.O. Rogers is not at his post, I/Is would have to be returned to their dorms, a supervisor would be called, it would be noted in the Watch Commander[']s Log, it would be noted in the Lawns and Grounds logbook and he would face disciplinary action.  [ ] Neither the logbook for Lawns and Grounds maintained by the Lawn and Grounds Office 1 nor the Watch Commander's logbook note that anything unusual occurred on September 2, 2020.") (citations omitted).  But the Court agrees with Plaintiff that, given the disputed record, it is not appropriate for the Court to draw such inferences for purposes of ruling on Defendants' motion for summary judgment.  Dkt. No. 63 at 18-20; *see also Matsushita*, 475 U.S. at 587.  The Court reaches the same conclusion with respect to Officer Fleming.  Officer Fleming does not appear to recall precisely where he was on September 2, 2020, but reasons that he would have been at his assigned post in the weightroom.  *See, e.g.,* Dkt. No. 66-4 at 7 ("I do not recall if I was working on September 2, 2020, but if I was, at 12:15 when the alleged assault occurred, I would have been in the weightroom supervising the I/Is during their afternoon recreation.  I would not have been anywhere near the metal detector shack.").  Given that there is a factual dispute as to whether Officers Fleming and Rogers were present during Plaintiff's alleged assault, summary judgment on Plaintiff's excessive force and failure to intervene claims is not appropriate on this ground.

Defendants' alternative argument as to the excessive force claim against Officer Rogers, however, is persuasive.  While Plaintiff is pursuing a separate failure to intervene claim against Officer Rogers, there is no suggestion in the record that Officer Rogers himself assaulted Plaintiff.  Dkt. No. 53-39 at 14.  Defendants are also correct that Plaintiff has not opposed dismissal of the excessive force claim against Officer Rogers.  Dkt. No. 66-4 at 6.  Accordingly, the Court grants

11

this portion of the Motion and dismisses Plaintiff's excessive force claim against Officer Rogers. *Jackson*, 766 F.3d at 195.

Defendants' third argument, regarding the dismissal of Plaintiff's failure to intervene claim against Sergeant Reynolds and Officer Fleming is unpersuasive based on the current record. At summary judgment, a plaintiff may proceed on alternative theories where the relevant facts are in dispute. *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999); *see also Snyder v. Fish*, No. 19-CV-1085, 2022 WL 1719058, at *15 (N.D.N.Y. May 27, 2022). As detailed above, a core factual dispute between the parties is whether Sergeant Reynolds and Officer Fleming were present and used force against Plaintiff outside the shack house.[8] *See, e.g.,* Dkt. No. 63-28 at ¶ 2; Dkt. No. 66-5 at ¶¶ 26-27, 30, 34, 37-41. As such, summary judgment on Plaintiff's alternative failure to intervene theory is not appropriate. Accordingly, the Court denies the Motion as to Plaintiff's failure to intervene claim against Sergeant Reynolds and Officer Fleming.

### C. False Arrest Claim

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (alteration in original) (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). And "[u]nder New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)).

---

[8] Indeed, the partial Motion does not seek summary judgment as to Plaintiff's excessive force claim against Sergeant Reynolds. *See, e.g.,* Dkt. No. 53-39 at 3.

The Complaint alleges the following basis for Plaintiff's false arrest claim:

[ ] Following the subject incident, defendant officers filled out false and misleading reports regarding Plaintiff's conduct during the subject incident.

[ ] As a result of such false and misleading reports, Plaintiff was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained in punitive segregation, confined, incarcerated and prosecuted by the defendants, without any probable cause, privilege or consent.

[ ] As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time [and] he was detained in punitive segregation, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

Dkt. No. 1 at ¶¶ 32-34.

Following discovery into these allegations, and as detailed above, the parties now agree that, while at Ogdensburg, Plaintiff was never subjected to disciplinary action, was never placed in punitive segregation, and never had any misconduct reports filed against him. *See supra* Section II.B; *see generally DeJesus v. City of New York*, 55 F. Supp. 3d 520, 523-24 (S.D.N.Y. 2014) (discussing Fourth Amendment considerations for incarcerated individuals subject to punitive segregation). Given that there is no genuine dispute of material fact regarding these allegations, the Court agrees with Defendants that they are entitled to judgment as a matter of law on Plaintiff's false arrest claim.[9] Dkt. No. 53-39 at 13.

---

[9] To the extent that Plaintiff argues that his excessive force claim should proceed to trial under both the Fourth Amendment and the Eighth Amendment, the Court finds that argument unpersuasive. Dkt. No. 63 at 30-31. Even if Plaintiff had pled a Fourth Amendment excessive force claim, Plaintiff has not established a seizure for purposes of the Fourth Amendment. *See, e.g., Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012) ("[Plaintiff] could not have suffered a deprivation of liberty as a result of the [second] burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted. . . . 'A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'") (fourth alteration in original) (quoting *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 116 (2d Cir.1995)); *Williams v. Carter*, No. 13-cv-382, 2014 WL

## D. Deliberate Indifference Claim

"An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "To prevail on an Eighth Amendment claim for deliberate indifference to medical needs, a plaintiff must show: (1) the inadequacies in his medical care were objectively serious (the objective test); and (2) the defendant acted with deliberate indifference to his serious medical needs (the subjective test)." *Collins v. Figura*, No. 23-109, 2024 WL 1739084, at *1 (2d Cir. Apr. 23, 2024) (summary order) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)). "The term 'deliberate indifference describes a state of mind more blameworthy than negligence,' but it is a standard that 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 631 (2d Cir. 2025) (first quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); and then citing *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996)). "This means 'that the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (alteration in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).

However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Wright v. Martin*, No. 23-7762-pr, 2025 WL 1091221, at *3 (2d Cir. Apr. 8, 2025) (summary order) (first quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.

---

5361494, at *4 (N.D.N.Y. Oct. 21, 2014) ("A plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests.") (citation omitted).

1998); and then citing *Estelle*, 429 U.S. at 107).  And "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citations omitted).

With respect to Plaintiff's deliberate indifference claim against the remaining defendants, *see supra* Section IV.A, Defendants first argue that this claim fails at the subjective prong because Sergeant Reynolds, Officer Fleming, and Officer Rogers were not involved in—and did not deny, delay, or interfere with—Plaintiff's medical care.  Dkt. No. 53-39 at 18-20, 22-24.  The Court agrees.[10]

Plaintiff contends that he was assaulted for seven to ten minutes beginning at approximately 12:15 p.m. on September 2, 2020; that he then walked to the laundry shop and requested to speak with Sergeant Reynolds; that Sergeant Reynolds arrived and directed Officer Rogers to escort Plaintiff to the infirmary; and that Plaintiff was examined and treated by a non-party nurse in the infirmary at approximately 12:40 p.m.  *See supra* Section II.B.  The record thus establishes that no Defendant impaired—and some Defendants affirmatively facilitated—the prompt evaluation and treatment of Plaintiff by a non-party medical professional following the alleged assault.  As a result, no reasonable juror could conclude that any of these Defendants exhibited deliberate indifference by delaying or denying Plaintiff medical treatment on September 2, 2020.  *See, e.g., Jones v. Vives*, 523 F. App'x 48, 50 (2d Cir. 2013) ("[A]lthough a § 1983 claim can be based on a significant delay in receiving medical treatment, a plaintiff must allege that the individuals causing the delay had the requisite state of mind[.]"); *Lopez v. City of New York*, No. 19-cv-03887, 2021 WL 466974, at *6 (S.D.N.Y. Feb. 9, 2021) ("Because under the circumstances

---

[10] As a result, the Court need not reach the parties' arguments regarding the objective prong.

it was reasonable for [the defendants] to defer to the expertise and judgment of trained medical personnel, the Court cannot infer that they demonstrated deliberate indifference.") (collecting cases).

Similarly, Plaintiff has offered no evidence that any of the hundreds of sick call requests he purportedly submitted were given to, or were the responsibility of, Sergeant Reynolds, Officer Fleming, or Officer Rogers, nor that any of these Defendants interfered with his medical treatment following the alleged assault. *Compare* Dkt. No. 53-39 at 19-20, 22-24, *with* Dkt. No. 63 at 28-30; *see also Banks v. No. 8932 Corr. Officer*, No. 11-cv-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed.") (citing *Estelle*, 429 U.S. at 104).  Accordingly, the Court grants this portion of the Motion and dismisses Plaintiff's deliberate indifference claims.

### E.  Doe Defendants and Plaintiff's Remaining Claims

The Court notes that, despite several years of discovery, Plaintiff has not amended the Complaint to identify any of the Doe Defendants.  *See generally* Docket Sheet.  There is also no indication in the record that Plaintiff properly served the Doe Defendants, as required by Rule 4 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 4(m).  The Complaint was filed on July 12, 2023, and as such Plaintiff's time to complete service expired years ago.  Dismissal is warranted where a plaintiff has "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay." *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007); *see also Tolchin v. Cnty. of Nassau*, 768 F. App'x 60, 61-62 (2d Cir. 2019) (affirming district court's dismissal pursuant to Rule 4(m) where plaintiffs did not properly serve defendants until

16

"more than 16 months after the complaint was filed"). As such, Plaintiff's claims against the Doe Defendants are dismissed. *Kaczmarek v. City of Schenectady*, No. 10-cv-1193, 2013 WL 5506276, at *2 (N.D.N.Y. Oct. 4, 2013) ("Because plaintiffs have failed to timely identify and serve the John Doe defendants, plaintiffs' claims against both John Doe defendants are dismissed.").

As a result of this Memorandum-Order and Decision and the parties' partial stipulation of discontinuance, *see* Dkt. No. 20, the following Section 1983 claims remain and may proceed to trial: (i) excessive force against Sergeant Reynolds and Officer Fleming, Dkt. No. 1 at ¶¶ 28-30; and (ii) failure to intervene against Sergeant Reynolds, Officer Fleming, and Officer Rogers, *id.* at ¶¶ 47-50.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 53, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's (i) first claim under Section 1983 for excessive force, as against Sergeant Tolman, Officer Gardner, and Officer Rogers; (ii) second claim under Section 1983 for false arrest; (iii) third claim under Section 1983 for deliberate indifference; and (iv) fifth claim under Section 1983 for failure to intervene, as against Sergeant Tolman and Officer Gardner are **DISMISSED**; and the Court further

**ORDERS** that Sergeant Tolman, Officer Gardner, and the Doe Defendants are **DISMISSED** as defendants in this action; and the Court further

**ORDERS** that the Defendants' motion to dismiss, Dkt. No. 53, is otherwise **DENIED**; and the Court further

**ORDERS** that the Defendants' motion to seal, Dkt. No. 54, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 25, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

18